FILED
CLERK, U.S. DISTRICT COURT

8/17/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CD___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>FLORIN DUDUIANU,<br>   aka "Gheorghe-Catalin Macingo,"<br>   aka "Jonathan Hirschi,"<br>   aka "Nicu Petru Sandra,"<br>   aka "Anaser Duduianu,"<br><br>    Defendant. | SA CR 8:23-cr-00116-JWH<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1344(2): Bank Fraud;<br>18 U.S.C. § 1029(a)(2): Unlawful<br>Use of Unauthorized Access<br>Devices; 18 U.S.C. § 1028A(a)(1):<br>Aggravated Identity Theft; 18<br>U.S.C. §§ 982 and 1029: Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 1344(2), 2(a), 2(b)]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.    The California Department of Social Services ("DSS") administered benefits to residents of California through Electronic Benefit Transfer ("EBT") accounts, including CalFresh and CalWorks benefits.

2.   CalFresh benefits were intended for low-income California residents who met federal income eligibility rules and wanted to add to their budget to purchase healthy and nutritious food for their households.  CalWorks benefits were intended for low-income California residents with children who met federal income eligibility rules for cash aid to use for expenses including housing, utilities, or medical care.

3.   To qualify for CalFresh and CalWorks benefits, a California resident had to submit an application for the benefits being sought, asserting that the resident met certain eligibility rules.

4.   Once a resident qualified for CalFresh or CalWorks benefits, DSS administered an EBT card to the recipient that could be used to access the recipient's EBT account through various financial institutions' automated teller machines ("ATMs"), including Wells Fargo Bank ATMs, or to make point-of-sale purchases through debit transactions.  Upon receiving the EBT card, the recipient created a Personal Identification Number ("PIN") that was used to access the EBT account with the EBT card.

5.   DSS typically deposited monthly EBT benefits, including CalFresh and CalWorks benefits, directly into the EBT account at the beginning of each month.  The recipient could then use the EBT card to withdraw benefits from the EBT account using ATMs, including ATMs that Wells Fargo Bank operated.

6.   Wells Fargo Bank was a financial institution that was insured by the Federal Deposit Insurance Company.

7.   "Cloned cards" were plastic cards of the size and shape of standard credit cards, which carried a magnetic strip that had been

re-encoded with account numbers that did not match the account numbers on the front of the cards.

8. Cloned cards could be used at ATMs to withdraw cash benefits, including CalFresh and CalWorks benefits, from the account associated with the account number that had been re-encoded onto the magnetic strip.

B. SCHEME TO DEFRAUD

9. Beginning by at least on or about August 2, 2023, in Orange County, within the Central District of California, and elsewhere, defendant FLORIN DUDUIANU, also known as ("aka") "Gheorghe-Catalin Macingo," aka "Jonathan Hirschi," aka "Nicu Petru Sandra," aka "Anaser Duduianu," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of Wells Fargo Bank by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10. The fraudulent scheme was operated and was carried out, in substance, in the following manner:

    a. Defendant DUDUIANU and other co-schemers obtained account information and PINs for EBT cards by unlawful means and without the permission of the authorized cardholders.

    b. Defendant DUDUIANU and other co-schemers then re-encoded blank prepaid gift cards with the unlawfully obtained EBT card information, including CalFresh and CalWorks account numbers.

    c. Defendant DUDUIANU and other co-schemers also obtained cloned EBT cards that had been re-encoded with EBT account numbers.

        d.   Defendant DUDUIANU and other co-schemers then used the re-encoded EBT cards, along with the corresponding stolen PIN numbers and personal identifying information, to conduct fraudulent cash withdrawals, including of CalFresh and CalWorks benefits, without permission or authorization from the EBT account holders.  In doing so, defendant DUDUIANU and other co-schemers falsely represented and maintained the false pretense that they were the EBT account holders and were otherwise authorized users of the EBT card and concealed that the withdrawals they made with the re-encoded EBT cards were made without the authorized user's consent.

C.    <u>EXECUTION OF THE FRAUDULENT SCHEME</u>

       11.  On or about August 2, 2023, in Orange County, within the Central District of California, and elsewhere, defendant DUDUIANU and others known and unknown, each aiding and abetting the other, committed and willfully caused others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| COUNT | ACT |
|---|---|
| ONE | Use of a cloned EBT card -- a gift card programed with account information from an EBT card issued in the name of R.S. -- to withdraw $1,000 at a Wells Fargo Bank ATM in Placentia, California |
| TWO | Use of a cloned EBT card -- a gift card programed with account information from an EBT card issued in the name of J.B. -- to withdraw $800 at a Wells Fargo Bank ATM in Placentia, California |
| THREE | Use of a cloned EBT card -- a gift card programed with account information from an EBT card issued in the name of J.B. -- to withdraw $50 at a Wells Fargo Bank ATM in Placentia, California |

COUNT FOUR

[18 U.S.C. §§ 1029(a)(2), 2(a)]

12. Beginning on a date unknown, and continuing through on or about August 2, 2023, in Orange County, within the Central District of California, and elsewhere, defendant FLORIN DUDUIANU, also known as ("aka") "Gheorghe-Catalin Macingo," aka "Jonathan Hirschi," aka "Nicu Petru Sandra," aka "Anaser Duduianu," together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and with intent to defraud, used unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, Electronic Benefit Transfer account numbers belonging to other persons, and by such conduct obtained things of value aggregating at least $1,000 during a one-year period, with said use having an effect on interstate and foreign commerce.

|   |   |
|---|---|
| 1 | COUNT FIVE |
| 2 | [18 U.S.C. § 1028A(a)(1)] |

3        13.  On or about August 2, 2023, in Orange County, within the Central District of California, defendant FLORIN DUDUIANU, also known as ("aka") "Gheorghe-Catalin Macingo," aka "Jonathan Hirschi," aka "Nicu Petru Sandra," aka "Anaser Duduianu," knowingly possessed and used, without lawful authority, a means of identification that defendant DUDUIANU knew belonged to another person, namely, the name, account number, and personal identification number, belonging to victim J.B., during and in relation to the offense of Bank Fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Two of this Indictment.

COUNT SIX

[18 U.S.C. § 1028A(a)(1)]

14. On or about August 2, 2023, in Orange County, within the Central District of California, defendant FLORIN DUDUIANU, also known as ("aka") "Gheorghe-Catalin Macingo," aka "Jonathan Hirschi," aka "Nicu Petru Sandra," aka "Anaser Duduianu," knowingly possessed and used, without lawful authority, a means of identification that defendant DUDUIANU knew belonged to another person, namely, the name, account number, and personal identification number, belonging to victim R.S., during and in relation to the offense of Unlawful Use of Unauthorized Access Devices, a felony violation of Title 18, United States Code, Section 1029(a)(2), as charged in Count Four of this Indictment.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1.     Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Three and Five of this Indictment.

2.     The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party;

//

//

//

(c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1029]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1029, in the event of the defendant's conviction of the offenses set forth in any of Counts Four or Six of this Indictment.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)  Any personal property used or intended to be used to commit the offense; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a

10

third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

   /S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

SCOTT PAETTY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DAVID Y. PI
Assistant United States Attorney
Major Frauds Section